[Cite as *State v. Ngaide*, 2026-Ohio-478.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240635 |
| | | TRIAL NO. B-2304353 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| KALIDOU NGAIDE, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 2/13/2026 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Ngaide*, 2026-Ohio-478.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                          :         APPEAL NO.    C-240635
                                                  TRIAL NO.     B-2304353
    Plaintiff-Appellee,            :

  vs.                                  :
                                                        *O P I N I O N*
KALIDOU NGAIDE,                         :

    Defendant-Appellant.           :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 13, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Angela J. Glaser*, for Defendant-Appellant.

Per Curiam.

**{¶1}** When officers pulled defendant-appellant Kalidou Ngaide over, he told them there was a gun on the floor of his car under the driver's seat. Officers searched and found a loaded gun where Ngaide had said it would be.

**{¶2}** Ngaide was indicted on one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2) and one count of improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B). Ohio law exempts most "qualifying adults" from these restrictions on carrying firearms. *See State v. Stonewall*, 2025-Ohio-4974, ¶ 4 (1st Dist.). But Ngaide was not a "qualifying adult" at the time of his arrest because, as all parties acknowledge, he had a pending charge for a violent misdemeanor. *See* R.C. 2923.111(A)(1)(c) (providing that a "qualifying adult" must "[s]atisf[y] all of the criteria listed in [R.C. 2923.125](D)(1)(a) to (j)"); R.C. 2923.125(D)(1)(d) (requiring that applicants not be "under indictment or otherwise charged with . . . a misdemeanor offense of violence").

**{¶3}** Ngaide nevertheless moved to dismiss both counts, arguing that the Second Amendment to the United States Constitution, as interpreted in *New York State Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1 (2022), prohibited criminalizing his possession of a firearm concealed or in a motor vehicle. The trial court denied that motion.

**{¶4}** The case proceeded to a bench trial. At the close of the State's case, Ngaide moved for a judgment of acquittal on both counts under Crim.R. 29. The trial court granted the motion to acquit Ngaide of the concealed-carry charge, apparently on statutory grounds.[1] It denied the motion to acquit him of the improper-handling

---

[1] Ngaide had argued that, because the firearm had not been on his person, R.C. 2923.12(C)(1)(c) prohibited the State from prosecuting him under the concealed-carry statute.

charge, however, as Ngaide relied on the same constitutional argument he had raised in his failed motion to dismiss. The trial court found Ngaide guilty of improperly handling a firearm in a motor vehicle and sentenced him to two years of nonreporting community control.

{¶5} Ngaide then took this timely appeal. His sole assignment of error challenges the denial of his *Bruen* claim at the motion-to-dismiss stage, which we review de novo. *See State v. Thacker*, 2024-Ohio-5835, ¶ 7 (1st Dist.); *State v. Troisi*, 2022-Ohio-3582, ¶ 17.

{¶6} Ngaide's *Bruen* argument has already been resolved by this court's precedents. We have twice upheld prosecutions under R.C. 2923.16(B), the charging provision at issue here, that were brought against defendants who were not "qualifying adults" because they were under 21 years of age. *Stonewall*, 2025-Ohio-4974, at ¶ 21-25 (1st Dist.); *State v. Baxter*, 2025-Ohio-5722, ¶ 11-14 (1st Dist.). And we have likewise upheld a concealed-carry prosecution against a defendant who, like Ngaide, was not a "qualifying adult" because of a pending violent-misdemeanor charge. *State v. Hall*, 2025-Ohio-1644, ¶ 32-33, 91 (1st Dist.). Taken together, therefore, we have squarely held that the State may, under *Bruen*, limit an individual's ability to carry firearms in the way and for the reason it limited Ngaide's.

{¶7} We therefore hold that, under *Hall*, *Stonewall*, and *Baxter*, the State was permitted to prosecute Ngaide under R.C. 2923.16(B). The trial court therefore did not err in denying his motion to dismiss. We overrule Ngaide's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **CROUSE, J.,** concur.

**BOCK, J.,** dissents.

**KINSLEY, P.J.,** concurring.

{¶8} Given the binding precedent of this court in *State v. Hall*, 2025-Ohio-1644 (1st Dist.), and subsequent opinions, I concur and join the per curiam opinion. I do so because *Hall* determined that the State's law prohibiting individuals facing misdemeanor charges of violence from carrying a concealed weapon comports with the Second Amendment. *Hall* at ¶ 91. I concede that Ohio's improper-handling law, like its concealed-carry law, imposes less than a total disability on firearm possession. I therefore see *Hall* as the more analogous precedent than our opinion in *State v. Brown*, 2025-Ohio-8, ¶ 1 (1st Dist.), in which we invalidated the State's weapons-under-disability ban as applied to an individual under felony indictment.

{¶9} If not constrained by precedent, however, I would be inclined to agree with Ngaide's Second Amendment argument for the reasons I explained in my dissent in *State v. Stonewall*, 2025-Ohio-4974 (1st Dist.). I join the per curiam opinion because *Hall* requires me to do so, while continuing to hold reservations about the constitutionality of Ohio's improper-handling law.

**CROUSE, J.,** concurring.

{¶10} I agree that our prior cases have answered the questions raised in this appeal, so I concur with the court's per curiam opinion. I write separately to explain why, in my view, the State's application of R.C. 2923.16(B) to Ngaide and defendants like him is constitutional, and when it may not be.

{¶11} Ngaide falls within the plain text of R.C. 2923.16(B). He alleges, however, that the statute is unconstitutional as applied to the facts of his case. The relevant facts, as alleged in the indictment, include that (1) Ngaide knowingly

"transported or had a loaded firearm in a motor vehicle," and (2) the "firearm was accessible to the operator or [a] passenger without leaving the vehicle." The bill of particulars clarifies these allegations by alleging that (3) Ngaide was "driving under suspension and had open warrants for his arrest," (4) the firearm was "on the . . . driver's side floorboard," and (5) "[t]he firearm was accessible to [Ngaide] without exiting the vehicle."

{¶12} The question, then, is whether our Nation's history and tradition of firearm regulation allow the State to prosecute such conduct under R.C. 2923.16(B). The State argues that the Second Amendment permits it to bring such prosecutions because R.C. 2923.16(B), like historical concealed-carry restrictions, imposes only "a limited burden on the manner in which [Ngaide] could transport a firearm in his motor vehicle." I generally agree with the State's concealed-carry analogy.

{¶13} As the United States Supreme Court acknowledged in *New York State Rifle & Pistol Assn. v. Bruen*, 597 U.S. 1 (2022), and as this court further explained in *State v. Hall*, 2025-Ohio-1644 (1st Dist.), and *State v. Stonewall*, 2025-Ohio-4974 (1st Dist.), early American courts and legislatures permitted states to "eliminate one kind of public carry—concealed carry—so long as they left open the option to carry openly." *Bruen* at 59; *accord Hall* at ¶ 75; *Stonewall* at ¶ 24; *see also, e.g., Nunn v. State*, 1 Ga. 243, 251 (1846) (striking down public-carry prohibition as applied to open carry, but upholding it as applied to concealed-carry, because doing so did "not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms" (Emphasis in original.)). Historically, several states imposed such concealed-carry restrictions on all or virtually all their citizens to reduce the risk of surprise shootings with hidden arms. *See Hall* at ¶ 89, 103-105. Given this history of universal concealed-carry bans, *Hall* and *Stonewall* held that the Second Amendment

6

and *Bruen* permit states today to impose similar concealed-carry restrictions on subsets of that larger group—so long as open carry remains available and any statutory classifications do not offend other constitutional provisions, like the Equal Protection Clause. *See id*. at ¶ 101-103, 108-109; *Stonewall* at ¶ 20.

{¶14} Although not phrased as such, R.C. 2923.16(B) falls within this longstanding tradition of regulating concealed carry. While R.C. 2923.16(B)'s terms punish defendants for having a loaded weapon in a motor vehicle, the statute's history and practical effect make clear that it was meant to prevent the dangers of loaded weapons concealed in motor vehicles.

{¶15} Prior to Ohio's 1974 overhaul of its criminal code, the crime of "improperly handling a firearm in a motor vehicle" did not exist. Rather, the discharge of firearms from a motor vehicle was presumably governed by former R.C. 2909.12,[2] and the possession of firearms in a vehicle by former R.C. 2923.01, the prior version of our concealed-carry statute.[3] *See Porello v. State*, 121 Ohio St. 280, 289-290 (1929) (applying G.C. 13693, the predecessor to former R.C. 2923.01 and current R.C. 2923.12); *Cleveland v. Betts*, 107 Ohio App. 511, 512-513 (8th Dist. 1958) (holding that a weapon in a locked glove box could be deemed concealed on or about the defendant's person under former R.C. 2923.01). Prior to 1969,[4] even an unloaded weapon stowed in a glovebox could be cause for a concealed-carry prosecution. *See*

---

[2] R.C. 2909.12 no longer exists. The version of former R.C. 2909.12 in force immediately prior to the 1974 overhaul was the version as amended by Am.Sub.H.B. No. 146, 131 Ohio Laws, Part II, 1693 (effective Oct. 6, 1965). The text of former R.C. 2909.12 as amended can be found at 131 Ohio Laws, Part I, 675.

[3] The version of the concealed-carry statute in force prior to the 1974 overhaul was the version as amended by Am.H.B. No. 288, 133 Ohio Laws 2027, 2028 (effective Nov. 25, 1969). A version of former R.C. 2923.01 would later be renumbered as R.C. 2923.12.

[4] The version of former R.C. 2923.01 in effect prior to the 1969 amendment was the version as amended by Am.Sub.H.B. No. 87, 132 Ohio Laws, Part II, 2495 (effective Nov. 24, 1967). The text of that version can be found at 132 Ohio Laws, Part I, 953.

*Betts* at 512-513; *see also State v. Haugabrook*, 31 Ohio Misc. 157, 158 (2d Dist. 1971) (discussing the statutory change).

{¶16} The General Assembly altered this regime as part of its overhaul of Ohio's criminal code, which took effect in 1974. Am.Sub.H.B. No. 511, 134 Ohio Laws 1866 (relevant provisions effective Jan. 1, 1974) ("H.B. 511"). The Assembly sought to protect individuals travelling with properly-stored guns from prosecution by carving out such conduct from the general-purpose concealed-carry statute. From 1974 on, an individual who kept a gun in their vehicle but not on their person would not generally be guilty of carrying a concealed weapon. *See id.* at 1965-1966, enacting former R.C. 2923.12(C)(4) (now codified as amended at current R.C. 2923.12(C)(1)(c)). Instead, such conduct would be governed by the new "improperly handling firearms in a motor vehicle" statute. *See id.* at 1968-1969, codified as amended at R.C. 2923.16. Subsection (A) of this new statute replaced former R.C. 2909.12's ban on shooting out of a vehicle with a prohibition on "knowingly discharg[ing] a firearm while in or on a motor vehicle." *Id.* at 1968; *id.*, § 2, at 2033 (repealing former R.C. 2909.12). More importantly for this case, subsections (B) and (C) prohibited having a loaded firearm if that firearm was accessible or not properly stored. *See id.*, § 1, at 1968.

{¶17} The comments of the Legislative Service Commission ("LSC") make clear that this new car-specific gun restriction remained targeted at the problem of concealed weapons. The LSC explained that "the rationale" for prohibiting loaded guns to be accessible in cars was "that even if a loaded weapon is lying openly on the seat, it is still concealed from the view of anyone approaching the car, such as a law enforcement officer, and can be used without warning the same as if it were truly hidden." LSC Comment to H.B. 511, available in Ohio Rev. Code Ann. § 2923.16.

{¶18} The history of and commentary on R.C. 2923.16 therefore make clear

that subsection (B) was intended as a restriction on the concealment of usable weapons in cars. Though it may function differently from ordinary concealed-carry statutes, R.C. 2923.16(B)'s core purpose is still "to reduce the risk of surprise attacks from hidden weapons" and to ensure that those approaching the vehicle are not put at risk without notice. *See Hall*, 2025-Ohio-1644, at ¶ 57, 89 (1st Dist.); *Stonewall*, 2025-Ohio-4974, at ¶ 24 (1st Dist.). *Compare State v. Baxter*, 2025-Ohio-5722, ¶ 13 (1st Dist.) (holding that the defendant's "conduct, keeping a firearm concealed in his waistband while he was a passenger in a car, is a prime example of the kind of conduct that *Hall* recognized the State could regulate").[5]

{¶19} In the mine-run of cases, R.C. 2923.16(B) functions in exactly this way. Take this case, for example. The bill of particulars alleged that Ngaide's weapon was "loaded" and "on the . . . driver's side floorboard." Testimony at the hearing corroborated this fact, and Ngaide has not contested it. The gun was well within Ngaide's reach and obviously hidden from any outside view. It was not on Ngaide's *person*, so the trial court rightly dismissed the concealed-carry charge under R.C. 2923.12(C)(1)(c). However, by virtue of the weapon's placement in the car, it was "concealed" from outside view by any reasonable definition of that term. R.C. 2923.16(B) stepped in to prohibit such vehicular concealed carry, just as H.B. 511

---

[5] Ordinarily, when a statute's plain language is unambiguous, statutory and legislative history are disfavored as interpretive guides. *See Johnson v. Montgomery*, 2017-Ohio-7445, ¶ 14; *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 2009-Ohio-2610, ¶ 27. Here, however, we are concerned not merely with meaning, but also with constitutionality. In general, courts are to presume that legislative enactments are and were intended to be constitutional. *See Mahoning Edn. Assn. of Developmental Disabilities v. State Emp. Relations Bd.*, 2013-Ohio-4654, ¶ 13; R.C. 1.47(A). Although *Bruen* turns this presumption on its head by shifting the burden to the State to justify its law in light of history and tradition, courts still "have a duty to liberally construe statutes 'to save them from constitutional infirmities.'" *Mahoning* at ¶ 13, quoting *Desenco, Inc. v. Akron*, 1999-Ohio-368, ¶ 13. Further, *Bruen* itself instructs courts to inquire beyond the "how" and into the "why" of a statute when determining whether it has a historical analogue. *See Bruen*, 597 U.S. at 29. I therefore look to the purpose and history of R.C. 2923.16 to help determine if the core reasoning underlying the statute comports with our Nation's regulatory traditions.

intended. I note that recent opinions from this court affirming improper-handling convictions have likewise involved weapons that were "concealed" under any ordinary definition. *See Baxter* at ¶ 2 (describing defendant's weapon as "concealed along Baxter's waistband"); *id.* at ¶ 21 (Crouse, P.J., concurring) ("I concur that our Nation's history and tradition of concealed-carry regulations means that R.C. 2923.16(B) can be constitutionally applied to a car passenger with a firearm concealed in his waistband."); *Stonewall*, 2025-Ohio-4974, at ¶ 74 (1st Dist.) (Kinsley, P.J., dissenting) (noting that defendant's firearm was contained in a bag in his possession).

{¶20} The General Assembly's intuition thus appears to have been a good one: weapons kept in cars will seldom be readily visible. As we explained in *Hall*, the State may constitutionally restrict such concealment of constitutionally-protected firearms, so long as those arms can still be borne openly. I continue to believe that "R.C. 2923.16(B) can be constitutionally applied as a regulation of the *manner* in which individuals carry firearms," and that this represents merely "a modest extension of the reasoning set forth in *Hall*." (Emphasis in original.) *Baxter* at ¶ 19 (Crouse, P.J., concurring).

{¶21} However, I do not believe this same history of concealed-carry regulations could justify applying R.C. 2923.16(B) to a driver or passenger whose weapon was not, in fact, concealed. Further, I believe that, under *Bruen*, "concealment" is a constitutionally relevant line, and that the task of defining it cannot entirely be outsourced to the legislature. In a future case, therefore, this court may be required to decide whether there are circumstances under which a weapon, though transported in violation of R.C. 2923.16(B), is not "concealed" in a historical and constitutional sense. One can imagine hypothetical scenarios in which calling a gun "concealed" merely because it sits within the spatial confines of a car would strain

credulity. (Would a gold-plated AR-15 atop the passenger seat of doorless Jeep Wrangler be "concealed" in any meaningful sense?) Should this court ever face an as-applied challenge in such an edge case, we will need to decide where the line between concealed and open carry is when it comes to vehicles.

{¶22} But this is not such a case. As already explained, the weapon Ngaide kept stashed beneath his driver's seat was concealed under any reasonable definition. I therefore leave drawing the outer edges of "concealment" for another day and another record. Today, as in *Baxter*, I think it enough to conclude that, "[j]ust as the State may criminalize the carrying of concealed weapons generally, it may also criminalize concealing them in a motor vehicle 'to reduce the number of surprise shootings and to put individuals around the arms-bearer on notice of the dangerous weapon they carry.'" *Baxter*, 2025-Ohio-5722, at ¶ 19 (1st Dist.) (Crouse, P.J., concurring), quoting *Hall*, 2025-Ohio-1644, at ¶ 87 (1st Dist.). And because Ngaide's weapon was concealed beneath his seat, I concur in the court's opinion affirming his conviction.

**BOCK, J.,** dissenting.

{¶23} Because this court has never resolved the issue of whether the State may disqualify an individual from possessing a weapon in a motor vehicle based on a pending violent misdemeanor, I do not agree that this court's precedent binds our decision in this case. Accordingly, I would sustain Ngaide's assignment of error based on our decisions in *State v. Brown*, 2025-Ohio-8 (1st Dist.), and *State v. Barber*, 2025-Ohio-1193, ¶ 64-79 (1st Dist.). Because the court does otherwise, I respectfully dissent.